## In Re Harriet A. Welch's Will.

October Term, 1904.

Present:   Rowell, C. J., Munson, Start, Watson, Haselton, and Powers, JJ.

Opinion filed July 6, 1905.

*Wills—Construction — Ambiguous   Testamentary   Designa-
tion—Evidence.*

The person intended by a testamentary designation which applies in different degrees to two persons, but not accurately and completely to either, is to be determined by the language of the will, aided by proof of the circumstances in which the testatrix used the language, but without inquiring further as to her purpose.

In such case, the ascertainment of the person intended is a judgment
of construction, and not a finding of fact.

A testatrix gave a legacy to "my niece Harriet Ellen Hubbard," which
was claimed by each of her two nieces, "Harriet Anna Hubbard"
and "Harriet Ella Hubbard Field." From a consideration of the
whole will and all the circumstances in which the testatrix used
the language, a majority of the Court hold that Harriet Ella Hub-
bard Field was the person intended by the will.

APPEAL from a decree of the probate court decreeing a
legacy to Harriet Ella Hubbard Field. Harriet Anna Hub-
bard, Appellant. Heard on the report of a referee at the
December Term, 1904, Addison County, *Tyler,* J., presiding.
Decree of the probate court affirmed. Harriet Anna Hubbard,
Appellant, excepted.

*William H. Bliss* for Harriet Anna Hubbard.

The county court decided the case as a question of law
on the facts found, and the case comes before this Court just
as it did before the county court. *Re McKeough's Est.,* 69
Vt. 41.

Middle names are often disregarded; errors in them do
not vitiate contracts. 21 Enc. of Law, 2nd Ed. 302; *Alex-
ander* v. *Wilmarth,* 2 Aikens 413; *Isaacs* v. *Wiley,* 12 Vt.
674; *Walbridge* v. *Kibbee,* 20 Vt. 543; *Allen* v. *Taylor,* 26
Vt. 599; *Dunn* v. *Gaines,* 1 McLean 321; *Gaines* v. *Stiles,* 14
Pet. 322.

*Marvelle C. Webber* for Harriet Ella Hubbard Field.

This is an exception to the finding of the fact by the
county court that Harriet Ella Hubbard Field was the person
intended by the testatrix. If the facts found by the referee,
and the will of the testatrix tend to support the finding and
judgment of the county court, the judgment must be affirmed.

*McDaniels* v. *McDaniels,* 40 Vt. 340; *Seward* v. *Heflin,* 20 Vt. 144; *Carr* v. *Sargent,* 15 Vt. 393.

MUNSON, J. We are called upon to ascertain the person entitled to a legacy given to the testatrix' niece, Harriet Ellen Hubbard. The legacy is claimed by two nieces of the testatrix, the petitioner and the appellant in this proceeding. The appellant's name is Harriet Anna Hubbard. The petitioner's maiden name was Harriet Ella Hubbard, but she became a Field by marriage some years before the will was made.

The county court sent the case to a referee to ascertain and report "all facts relative to the identity of the petitioner or the appellant * * with the legatee named in said will as Harriet Ellen Hubbard, that the court may be able to determine to what person to decree said legacy." Upon the coming in of the report the court filed the following: "Upon the facts found by the referee and upon our construction of the will, we find that Harriet Ella Field, the petitioner, was the person intended by the testatrix, * * and that the said Harriet Ella is entitled to receive said legacy."

The petitioner treats the decision of the county court as a mere finding of fact, which she is entitled to have sustained if there was any evidence tending to support it. The appellant contends that the decision was one of construction, the correctness of which is to be inquired into by this Court.

A testamentary designation which is equally applicable to more than one person or thing raises a question of intention which is independent of construction, and permits an inquiry as to the testator's actual purpose. The designation in controversy applies in different degrees to both claimants, but not accurately nor completely to either. Here, the Court is to gather the intention of the testatrix from the language of the will, aided by proof of the circumstances in which the testa-

trix used the language, but without inquiring further as to her purpose. This being the nature of the inquiry, the ascertainment of the person intended must be treated as a judgment of construction and not as a finding of fact. *McKeough's Est.* v. *McKeough,* 69 Vt. 41.

If the appellant was intended, the only mistake is in the middle name. If the petitioner was intended, her middle name is erroneously given, and her maiden surname used in place of the name acquired by marriage. At the time the will was drawn, the petitioner had been married twelve years. The testatrix had corresponded with her continously during that time, and must have addressed her through the mails as Mrs. Field. If the name in the will was given to the draftsman by the testatrix, it is difficult to believe that the maiden name would have been used if Mrs. Field was intended. It appears that the testatrix understood the importance of changing the name in case of marriage. There was a previous will, executed nine years before. In arranging for the will in suit, the testatrix gave the draftsman this former will and a memorandum prepared by her. Three of the female legatees named in the former will had married in the meantime, and their names were changed accordingly in the new will. The draftsman knew of these marriages only from the memorandum given him or from oral instructions of the testatrix. The bequest in controversy was given in the earlier will by the same name as in the last. There is nothing to indicate how the name came to be so written in the earlier will. If the bequest was intended for the petitioner, and the name as originally written came to the attention of the testatrix when making preparations for another will, it would seem almost certain that the name would have been changed in the new will, as well as the names of those who had married after the making of the earlier will. And it seems very probable that

the name as previously written did come to her attention at that time. One who procures a draftsman to prepare a will, and submits an old will with a memorandum of changes for his guidance, may well be supposed to have looked over the old will to see what changes should be noted in the memorandum. A mistake in the surname would thus have been discovered, and its correction accomplished, unless the correction failed through a subsequent undetected oversight of the draftsman. It is true that there was an error in the middle name whichever niece was intended, and that this passed without correction. But this circumstance can hardly be said to do away with the probability that an error in the surname would have been corrected in the circumstances stated. These considerations indicate that the appellant was intended.

The middle name given in the will has some resemblance both in letter and sound to that of the petitioner, but is entirely different from that of the appellant. The testatrix was perfectly familiar with the petitioner's middle name; for after her marriage the petitioner usually signed her name "Ella H. Field," and was usually called Ella by her friends, including the testatrix. The testatrix' name was Harriet Anna. Soon after the birth of the appellant, her father wrote the testatrix that the child had been named for her, and the testatrix' reply makes it certain that she then understood that the appellant's middle name was Anna. But in subsequent correspondence with the family she called her Hattie, and did not again refer to the middle name. The earlier will was made less than eight years after the correspondence regarding the appellant's name, and it can hardly be supposed that the testatrix had then forgotten that the child was named for her, and that her middle name was the same as her own. It would ordinarily seem that an erroneous insertion of the name "Ellen" might pass unnoticed more easily if the name intended was Ella than if it

was Anna; but there are some facts here that affect the weight of this consideration. Both wills were drawn by the same person. The draftsman's handwriting was obscure and difficult to read. Both the draftsman and the testatrix were somewhat deaf. Another clause of the last will affords evidence that the draftsman was somewhat inaccurate. This will was read to the testatrix, and was not seen by her after its execution. Perhaps in view of these circumstances no very satisfactory argument can be drawn from a comparison of the middle names.

There are other provisions of the will that bear upon this question. The petitioner's father was Varsil Hubbard, and the appellant's Peter Hubbard. The former had ten children, and the latter four. Peter was given one thousand dollars, and his children nothing, unless the legacy in question goes to the appellant. The next largest legacies were five hundred dollars. Nothing was given to Varsil, but four legacies were given to his children, and five if this legacy goes to the petitioner. It is apparent from the facts reported that the petitioner was the testatrix' favorite among the children of Varsil. It is found that her relations with the other children were friendly. Unless this legacy was intended for the petitioner, we have nothing given to the child with whom her relations were specially intimate, while legacies of from two to five hundred dollars are given to three of her sisters and a brother. The degree of the intimacy between the petitioner and the testatrix will appear more fully from the further statement.

The testatrix was a native of Rochester, Vt., but had lived a long time in Middlebury. At the date of the will the petitioner was forty-one years old and the appellant seventeen. The husband of the one and the parents of the other were in moderate but comfortable circumstances. The appellant was

born in Wisconsin, and there is no mention of her having lived or been elsewhere. The testatrix visited the appellant's family when the appellant was two years old. During her stay of three weeks she kept the appellant with her a good deal, showed much affection for her, gave her a silver spoon, and spoke of taking her home and educating her. She afterwards sent the appellant some small presents. The testatrix and the appellant's parents kept up a correspondence, but nothing further appears as to the testatrix' relations with the appellant. The petitioner lived with her father in Rochester until she was twenty, and after a considerable absence resided in Rochester again about three years. After her marriage she lived in Orange, Mass. While she was living with her father the testatrix visited the family from one to four times a year, and her father visited the testatrix about as often, usually taking members of the family with him. The petitioner went with her father once or twice a year. When a child, she lived with the testatrix one winter and attended school, and somewhat later she made the testatrix two visits of considerable length. The testatrix visited the petitioner every two or three years while the petitioner lived in Orange. The petitioner did not visit the testatrix at her home as often as that, but she went to Rochester quite often, and the testatrix would see her there. A correspondence between the testatrix and the petitioner began before the latter's marriage, and continued until the testatrix' death. The testatrix wrote quite often, usually once in two or three weeks, and the petitioner replied. If the petitioner did not answer promptly, the testatrix would write again. She continued to write the petitioner as long as she was able to write, and then had others write for her. These facts touching the relations of the testatrix and the two nieces point to the petitioner as the more probable recipient of her bounty.

Upon a review of the whole matter, a minority of the Court think the use of the name Hubbard instead of Field is the controlling feature of the case, and consider that the appellant is the person intended; while a majority of the Court think that greater weight should be given to other facts disclosed by the will and evidence, and that these identify the petitioner as the one meant. It is held therefore that the petitioner is the person intended by the will.

*Judgment affirmed with costs; to be certified to the Probate Court.*