[Civ. No. 12613.   Second Appellate District, Division Two.—July 5, 1940.]

In the Matter of the Estate of PATRICK S. MARTIN, Deceased.   Mrs. GEORGE PEEL–DAVIS, Appellant and Cross-Respondent, v. WILLIAM MARTIN et al., Respondents and Cross-Appellants.

Catlin & Catlin, Frank D. Catlin and Wm. E. Woodruff for Appellant and Cross-Respondent.

Faries & McDowell, McIntyre Faries and Samuel Schwartz for Respondents and Cross-Appellants.

WOOD, Acting P. J.—Patrick S. Martin died on January 29, 1938, leaving the following will, which was admitted to probate:

"11776 Chenault Str
Brentwood Hts L A
November 9th 35

"In case of my death I want my Brother in Law George C. McMullan & Sister in Law his wife Edith McMullan to be executors of the Estate I leave. Real & personal & to carry out the terms of the will left by my wife May Martin

"Signed

"Patrick S. Martin"

At the time of presenting Patrick Martin's will the executors named therein presented two unprobated wills of May Martin, who died on November 11, 1935, both made on July 19, 1935, one being marked exhibit 1 and the other exhibit 2. After a hearing on the petition for probate the trial court found that the will marked exhibit 2 was made later than the will marked exhibit 1 and should be received and incorporated into the will of Patrick S. Martin as a part thereof. That will is as follows:

"19th July, 1935

"11776 Chenault St
Brentwood Hgts
Los Angeles Cal.

"My Will & Testament

"I bequeath money in bank $1150.51 to my sister Mrs. George Peele Davis at once. All property in my own name

& property in partnership with P. S. Martin to be sold & proceeds to be given to sister Mrs. Geo Peel Davis & $500 dollars each to my brother Robert Pollock's two daughters Edith and Peggy. The Revenue from these properties to go to P. S. Martin during his lifetime. If he marries again all my property & my half in partnership with him to be sold at once & given to above mentioned heirs. I have worked to keep him and myself ever since I met him and even in death will be doing the same. My Sister Mrs. George McMullen and her Husband I appoint executors of my estate and I hope will have no trouble with P. S. Martin. He entered this Country with me as a Canadian without one dollar of his own. He has since become an American citizen & has not given me one dollar or contributed to my support, so there is no such thing as Community property with us. But I think he will be satisfied as long as he is provided for as long as he lives. In case my sister should die (Mrs. G. P. Davis) her share before P. S. Martin my estate to be divided equally among her four children.

"MAY MARTIN."

An appeal was taken from the decree admitting the will of Patrick S. Martin to probate and this court affirmed the order of the superior court (*Estate of Martin,* 31 Cal. App. (2d) 501 [88 Pac. (2d) 234]). On that appeal no attempt was made to interpret the will but it was expressly stated that it was "our duty only to determine of what the will consists".

When the petition for distribution came on for hearing the sister of Mrs. Martin who had been named as beneficiary in the latter's will, Mrs. George Peel Davis, asked that all of the property be distributed to her with the exception of the bequests of $500 each to Edith and Peggy Pollock. The brothers and sisters of Patrick Martin asked that all of the property be distributed to them in accordance with the laws of succession of this state. The court received evidence of the circumstances surrounding the making of the wills of Patrick and May Martin and thereafter found that "all the property of the Patrick S. Martin estate" was originally derived from the earnings and sale of a hotel in Canada owned by Patrick S. Martin as his sole and separate property, and from gifts of money received by him from his mother; that at the time May Martin made her will, July 19, 1935,

there was standing in her name the portion of said estate listed in exhibit ''A'' attached to the court's findings, and that at that time there was standing in the names of Patrick and May Martin, as joint tenants, that portion of said estate which was listed in exhibit ''B''; that on July 29, 1935, May Martin transferred to Patrick Martin all the property described in exhibit ''A'' and one-half of the joint tenancy property listed in exhibit ''B''; that after said transfer Patrick Martin made his will and therein ''adopted the intention of May Martin to dispose of the property which stood in her name, towit, the property listed in Exhibit 'A', and one-half of the joint tenancy property, towit, one-half of the property listed in Exhibit 'B', to the heirs which she named in her will''. The court concluded that Patrick Martin died intestate as to the undivided one-half of the property listed in exhibit ''B'' and as to all of the property listed in exhibit ''C'', property standing in his own name. In effect Mrs. Davis received 62/100 of the entire property and the brothers and sisters of Mr. Martin received 38/100 of the property.

Under the rule that evidence of the circumstances surrounding the making of a will may be received for the purpose of explaining its language (*Estate of Donnellan*, 164 Cal. 14, 19 [127 Pac. 166]), the trial court admitted evidence concerning the situation of the parties and the facts in connection with the making of the wills of Patrick and May Martin. The record now before us does not contain the evidence received by the court and therefore under well-established principles it must be presumed that the evidence is sufficient to support the findings of the court. We see nothing in the record to compel a view different from that expressed by the trial court in its finding ''that Patrick S. Martin adopted the intention of May Martin to dispose of the property which stood in her name'' at the time she made her will. The will of Patrick Martin merely appoints executors and directs that the terms of the will of May Martin be carried out. If the view of the heirs at law of Patrick Martin be adopted no significance whatever could be given to the direction to carry out the terms of May Martin's will. May Martin transferred all of her property to Patrick Martin ten days after she made her will, and according to the argument presented, there would be no property upon which the sole disposing provision of the will could operate. It is

apparent that Patrick Martin intended that the provision for carrying out the terms of his wife's will should be effective. Neither can the view of the sister of Mrs. Martin be upheld. To construe the provision of Patrick Martin's will that the terms of his wife's will be carried out, we must turn to the will of May Martin. We there find that she disposed of her own property only and made specific reference to the fact that some of the property was held in partnership with her husband. Of the partnership property she disposed of "my half of the same". We are satisfied that the court did not err in determining to whom distribution should be made.

█ The brothers and sisters of Patrick Martin argue that the will of May Martin was not incorporated in the will of Patrick Martin. On the former appeal it was directly decided that Patrick Martin did in fact incorporate in his will the will of May Martin which has been set forth above. That decision has become final and may not be upset by reference to evidence received by the trial court at a later hearing for the purpose of making a decree of distribution.

The judgment is affirmed. Neither party is to recover costs on appeal.

McComb, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 29, 1940.