[No. D011567. Fourth Dist., Div. One. June 20, 1991.]

COLUMBIA CASUALTY COMPANY, Cross-complainant and Appellant,
v.
NORTHWESTERN NATIONAL INSURANCE COMPANY,
Cross-defendant and Respondent.

COUNSEL

McInnis, Fitzgerald, Rees, Sharkey & McIntyre, Thomas E. Sharkey, Ralph W. Peters, Horvitz & Levy, Barry R. Levy and Mitchell C. Tilner for Cross-complainant and Appellant.

Adams, Duque & Hazeltine, Robert H. Roe, Patricia L. Hensley, Tribler & Orpett and D. J. Sartorio for Cross-defendant and Respondent.

OPINION

THOMPSON, J.*—This is an appeal from a judgment of dismissal entered after the trial court granted cross-defendant Northwestern National Insurance Company's (Northwestern) motion for judgment on the pleadings on Columbia Casualty Company's (Columbia) cross-complaint. We conclude that the allegations of Columbia's cross-complaint state a good cause of action for declaratory relief against Northwestern that is not refuted by judicial notice or a concession by Columbia. Accordingly, we reverse the judgment.

I

THE CONTEXT OF THIS APPEAL

In May 1985 Jacquelyn Johnson (Johnson) was seriously injured when an automobile in which she was a passenger was struck by a Coca Cola Bottling Company of San Diego (Coca Cola) truck. In August 1985 Johnson filed an action against Coca Cola which Coca Cola ultimately settled for $1,850,000. The case at bench arises out of a dispute over the relative obligations of Northwestern and Columbia, both of which issued policies insuring Coca Cola, to indemnify Coca Cola for its liability to Johnson.[1]

On August 4, 1988, Coca Cola filed an action against Columbia seeking a declaration that Columbia was obligated to indemnify it for $850,000 of the sum it had paid in settlement of Johnson's claim. Coca Cola asserted in its

---

*Retired Associate Justice of the Court of Appeal, Second District, sitting under assignment by the Chairperson of the Judicial Council.

[1]The relevant insurance policies were issued to Esmark, Inc., which was acquired by Beatrice Companies, Inc. Coca Cola is a subsidiary of Beatrice, and the parties agree that the policies cover Coca Cola.

complaint that it was insured against the Johnson claim under policies issued by Mission National Insurance Company (Mission) as its primary carrier and by Columbia as its excess carrier. Mission is alleged in this complaint to provide umbrella coverage in the amount of $5 million in excess of an underlying self-insured retained limit of $1 million, and Columbia is alleged to provide $10 million in coverage in excess to the Mission policy. Coca Cola's complaint does not refer to Northwestern as one of its insurers.

The complaint continues with allegations of Coca Cola's payment of $850,000 in excess of $1 million to Johnson and that Mission had declared bankruptcy and hence provided no coverage under its policy. The complaint asserts that because of the insolvency of Mission the Columbia policy "drops down" to provide coverage to Coca Cola for all liability in excess of Coca Cola's "$1 million self retention."

On August 7, 1989, Columbia filed its second amended cross-complaint, the pleading at issue in this appeal. This pleading names as defendants Northwestern, Coca Cola, and California Insurance Guarantee Association (CIGA). Northwestern is named "because its interests may be affected by the resolution of [the] controversy" between Columbia and Coca Cola. The cross-complaint seeks a declaration that: (1) Northwestern is a necessary party to the litigation, and (2) as to indemnification of liability for the Johnson claim, a policy of insurance issued by Northwestern and covering Coca Cola provides primary coverage to the extent of $1 million over a deductible of $1 million before Columbia's obligation arises.[2] Columbia's second amended cross-complaint incorporates by reference copies of the Northwestern, Mission, and Columbia insurance policies.

On October 20, 1989, the trial court granted Northwestern's motion for judgment on the pleadings on the cause of action against it contained in Columbia's cross-complaint. Columbia's appeal from this judgment is at issue here. On September 21, 1990, the trial court, having found that the Columbia policy "drops down" to provide coverage for the Johnson claim, rendered its judgment dismissing Columbia's cross-complaint against Coca Cola. Appeal from this later judgment is also now pending in this court but as yet is unbriefed.

---

[2]Another cause of action in the cross-complaint seeks a declaration that, because of Mission's insolvency, CIGA is obligated to indemnify Coca Cola to the extent that the Mission policy provides for indemnity. A third cause of action directed against Coca Cola and its predecessor in interest, Esmark, Inc., and parent, Beatrice Companies, Inc., seeks rescission or reformation of the Columbia policy because of misrepresentation and concealment by Coca Cola's predecessor, Esmark, Inc., of known risks from Playtex tampons when the predecessor obtained the policy which here covers Coca Cola. CIGA and Coca Cola are not parties to this appeal.

## II

### RELEVANT FACTS

A motion for judgment on the pleadings is the equivalent of a demurrer made after the pleadings are in. (6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 263, p. 564.) Hence the propriety of the trial court's action in granting Northwestern's motion must be tested by the sufficiency of the allegations included in Columbia's cross-complaint (*Hughes* v. *Western MacArthur Co.* (1987) 192 Cal.App.3d 951, 954-955 [237 Cal.Rptr. 738]) amplified only by matter that may properly be judicially noticed by the court (*Barker* v. *Hull* (1987) 191 Cal.App.3d 221, 224 [236 Cal.Rptr. 285]) and concessions made by the pleader, here Columbia. We recite the facts which follow in this light to determine whether the content of the three insurance policies incorporated by reference or matter extraneous to the second amended cross-complaint which can properly be considered on a motion for judgment on the pleadings controvert the cross-complaint's express allegation of coverage by the Northwestern policy.

At the time that Johnson was injured Coca Cola was insured by three policies issued to its parent company covering liability from automobile accidents: a first level policy from Northwestern, the coverage of which is at issue in this case; a second level excess policy issued by Mission with a policy limit of $5 million; and a third level excess policy issued by Columbia.

### A

#### *The Northwestern Policy*

Northwestern policy No. CLA255714 covers the period October 1, 1984, to October 1, 1985, and contains the following relevant provisions:

(a) A combined single limit endorsement reads in pertinent part as follows: "The total liability of the Company [(Northwestern)] for all damages and ultimate net loss . . . shall be $1,000,000 as the result of any one occurrence."

(b) An indemnification endorsement states: " 'The Company [(Northwestern)] will indemnify the insured for all sums which the insured shall . . . [be] obligated to pay as damages, all as more fully defined by the term "ultimate net loss," because of bodily injury . . . caused by an occurrence. The Company shall not be obligated to indemnify for such ultimate net loss

after the applicable limit of the Company's liability has been exhausted by payment of such ultimate net loss.'"

(c)   An ultimate net loss endorsement defines "ultimate net loss" as "the total sum which the insured, . . . pays as a consequence of any occurrence hereunder, including obligations . . . [for] personal injury, . . . [and] shall also include . . . all sums paid as . . . fees, charges and law costs, . . . expense for . . . lawyers, . . . and investigators and other persons and for litigation, settlement, adjustment and investigation of claims . . . ."

(d)   A deductible endorsement states: "[I]t is agreed that $1,000,000 shall be deducted from the amount of any loss, including defense coverage, as a result of each occurrence reported under this policy."

B

*The Mission Policy*

The Mission policy, covering the same period as the Northwestern policy, contains the following pertinent provisions:

(a)   "The company shall be liable for $5,000,000 ultimate net loss each occurrence, . . . in excess of:

"(1)   The amount recoverable under the underlying insurance set forth under Schedule A [paragraph DII A(1) of the policy covering auto insurance] . . . or

"(2)   Under coverage B [products liability and other liability coverage except automobile], self-insured retained limit of $1,000,000 ultimate net loss each occurrence . . . with respect to ultimate net loss not covered by underlying insurance set out in schedule A; it being understood, however, that other insurance available to the insured . . . shall reduce or, if it is $1,000,000 or more per occurrence . . . shall eliminate the insured's obligation with respect to the self-insured retained limit. . . ."

(b)   "All amounts and/or retained limits set forth in III A(1) . . . are subject to the following maximums: [¶] With respect to Esmark, Inc., $3,000,000 ultimate net loss in the aggregate . . . under III A(1) . . . . [¶] (This aggregate provision with respect to III A(1) applies only to the following policy . . . under schedule A: [¶] Northwestern National Insurance Company Comprehensive General and Auto Liability Policy No. CLA 255714). . . ."

(c)   "The term 'self-insured retained limit' means the amount of ultimate net loss which, in the absence of underlying insurance set forth under schedule A . . . is retained by the insured."

(d)   "The term 'ultimate net loss' means the total sum which the insured, or any company as its insurer . . . or both, pays as a consequence of any occurrence . . . ."

(e)   "It is a condition of this policy that the underlying insurance(s) as set out in schedule A . . . shall be maintained in full effect, except for any reduction of the aggregate limit or limits applicable thereto. Failure of the insured to comply with the foregoing shall not invalidate this policy, but in the event of such failure, the company shall only be liable to the same extent as it would have been had the insured complied."

(f)   "The insured may insure any part of or all of the self-insured retention indicated by limits of liability, section B, or take advantage of any other insurance available to it without prejudice to or invalidation of coverage under this policy. If any such insurance is less than the insured's self-insured retentions, then the insured will make up the difference."

Schedule A to the Mission policy in listing underlying insurance states that as to "Comprehensive General and Automobile Liability" the underlying insurance policy is Northwestern No. CLA255714 with a policy limit of $1 million "each occurrence."

C

*The Columbia Policy*

The Columbia policy covers the same period as the Northwestern and Mission policies. This policy follows the form of the Mission policy, i.e., incorporates its terms "except with regard to amount of insurance (limits) and premium . . . ." An endorsement to the Columbia policy includes the following provision: "The intent of the amendment to paragraph O (maintenance of underlying insurance) of section V of the Mission . . . policy . . . of this endorsement is: [¶] A. To prevent this policy from applying over reduced or exhausted underlying limits (i.e., 'dropping down') caused by: (I) The application of different or more restrictive terms and conditions. . . . [¶] B. Beatrice Companies, Inc. shall be self-insured with respect to any of the coverage deficiencies (i.e., 'gaps') set forth in the immediately preceding paragraph . . . ."

## D

### *Columbia's Concession*

In its points and authorities in opposition to Northwestern's motion for judgment on the pleadings, Columbia attached a copy of a hold harmless agreement between Northwestern and Esmark, Inc., Coca Cola's parent company, dated April 30, 1982. This agreement states:

"In consideration of Northwestern . . . issuing policies or other evidence of assurance, as per the attached Schedule A, Esmark, Inc. hereby agrees that no loss will be reported under any of the scheduled policies . . . or renewals thereof. If a loss should be reported, Esmark, Inc. agrees to indemnify and reimburse Northwestern for any and all losses and/or expenses paid on account of such loss . . . . [¶] It is further agreed that Esmark, Inc. will indemnify Northwestern for any and all losses and/or expenses that may occur, under these scheduled policies or other evidence of insurance, as a result of a suit or other action brought directly against Northwestern . . . ." Schedule A attached to the hold harmless agreement and dated October 1, 1984, lists CLA policy No. 255714.

These points and authorities contain the statement: "As a preliminary matter, Columbia concedes that Coca Cola may ultimately be liable to indemnify Northwestern for all amounts payable under the Northwestern Policy. However, that conclusion is based not upon the terms of the Policy, but rather is based totally upon a side agreement between Northwestern and Coca Cola . . . ."

## III

### THE TRIAL COURT'S RULING

In ruling on Northwestern's motion for judgment on the pleadings the trial court stated: "Columbia is not in a position to modify or reconstrue the insurance policy between Northwestern and [Coca Cola] in reality. The insurance policy is a contract. [It is] the intent of the parties to govern the terms and conditions of the contract. If Coca Cola and Northwestern intended to enter into a policy to provide a million dollar[s] in coverage with a million dollar deductible for various and sundry reasons, they obviously have the right to do that. And Columbia was bound by that."

In support of its conclusion granting Northwestern's motion the trial court's order states:

"[P]olicy No. CLA 255714, issued by Northwestern National to Esmark, Inc. is a 'fronting policy' which may be exhausted by payments made by the insured pursuant to its $1 million deductible obligation;

"[P]olicy No. CLA 255714 is unambiguous and demonstrates as a matter of law that Northwestern National merely stands behind or guarantees the insured's obligation to pay the first $1,000,000 of any covered loss[.]"

Columbia's motion for reconsideration accompanied by affidavits and excerpts from deposition testimony, all to the effect that in insurance industry parlance a deductible does not eliminate or affect stated coverage, was denied by the trial court.

## IV

### Contentions on Appeal

Columbia contends on this appeal: (1) the Northwestern policy must be construed to afford $1 million in first level coverage to Coca Cola over a $1 million deductible; (2) if this construction is not mandated, nevertheless the Northwestern policy is ambiguous so that construction of this policy to negate coverage is inappropriate in a motion for judgment on the pleadings; and (3) the trial court's construction of the policy is one which violates California's Financial Responsibility Law.

Respondent, Northwestern, counters that: (1) the Northwestern policy is unambiguously a "fronting policy" and the Mission policy confirms this; and (2) both Coca Cola and Northwestern intended that the policy be a "fronting policy."

## V

### The Standard for Granting Judgments on the Pleadings

Central to our decision on this appeal is defendant Northwestern's election to proceed in the trial court by way of a motion for judgment on the pleadings rather than by a motion for summary judgment. The standard governing the trial court's consideration of the former motion is quite different than is the standard governing consideration of the latter, and this difference materially affects the burden on the moving and responding parties.

■ A defendant's (or cross-defendant's) motion for summary judgment tests the existence of evidence to support the complaint's (or cross-complaint's) allegations. (6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 274, pp. 573-574; § 280, p. 580.) Once the movant has, by declaration or judicial notice, established facts which defeat the complaint's (or cross-complaint's) allegations it becomes the responding plaintiff's (or cross-complainant's) burden to come forward in a similar fashion with facts which support the allegations attacked by the movant. If movant sustains its initial burden, and the responding party fails to sustain the burden thus thrust on it, the motion for summary judgment must be granted. (*Op. cit. supra,* §§ 293-297, pp. 591-595.)

■ In contrast a motion for judgment on the pleadings is the equivalent of a general demurrer. (6 Witkin, *op. cit. supra,* § 262, p. 563; § 280, p. 580.) This motion tests whether the allegations of the pleading under attack support the pleader's cause if they are true. (*Op. cit. supra.*) ■ Where written instruments are the foundation of a claim or defense and are incorporated in a pleading, the recitals of the instruments take precedence over allegations in the pleading itself unless the incorporated instruments are susceptible to more than one interpretation. (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 385, 386, pp. 433-436.)

■ In a motion for summary judgment, judicial notice or an evidentiary admission or concession by the pleader/adversary can support the motion and thrust the burden on the pleader to come forward with facts in rebuttal. In contrast, in order for judicial notice to support a motion for judgment on the pleadings by negating an express allegation of the pleading, the notice must be of something that cannot reasonably be controverted. (2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) Judicial Notice, § 47.1, p. 1747-1754; *id.* (1990 supp.) § 47.2, p. 638; 1 Witkin, Cal. Evidence (3d ed. 1986) Judicial Notice, § 80, p. 75.) The same is true of evidentiary admissions or concessions.

The contrasting treatment of writings incorporated by reference which varies from express allegations of the pleading and the distinction in impact of judicial notice and evidentiary admissions or concessions in motions for summary judgment and motions for judgment on the pleadings does not rest on mere technicalities of pleading and procedure. Rather it is rooted in the demand of due process that a party be given "notice and opportunity for hearing appropriate to the nature of the case." (*Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 313 [94 L.Ed. 865, 872-873, 70 S.Ct. 652].)

Parol evidence may exist which will modify an apparent meaning of the incorporated ambiguous writing, and at a hearing on demurrer or motion for

judgment on the pleadings there is no opportunity to present it. Faced with a motion for summary judgment, the pleader is on notice that facts in rebuttal must be presented in opposition to the motion and aware of the necessity to present parol evidence of meaning and other facts countering those presented of the movant. A motion for judgment on the pleadings does not give this notice. The pleader has the right to expect that the ruling on the latter motion will proceed as process requires: that the motion will test the legal sufficiency of the pleading, treating its allegations as true for the purposes of the motion. The notice of motion for judgment on the pleadings is thus notice to be prepared to argue legal sufficiency of allegations; it is not notice to come forward with factual support for what is alleged even if the motion is a "speaking" one.

This process recognizes that there may in fact be evidence which challenges the truth of the allegations of the pleading under attack but defers the challenge until a motion for summary judgment or a trial. ■ There are, however, some few cases where whatever evidence is produced in support of the pleading, the pleader's cause is inevitably destined to fail. The terms of a writing incorporated by reference which rebut an allegation of the pleading may conceivably be so clear and simple that parol evidence will be inadmissible to refute them. Judicial notice may conclusively defeat the pleading as where it establishes res judicata or collateral estoppel. The pleader's own concession may have this same conclusive effect.

In these limited situations, the court, in ruling on a motion for judgment on the pleadings, properly looks beyond the pleadings. But it does so only because the party whose pleading is attacked will as a matter of law, or law's equivalent of judicial notice of a fact not reasonably subject to contradiction, fail in the litigation. Where the significant issue is one of fact and not of law this process is inappropriate.

## VI

### ANALYSIS

■ With the distinction between motions for summary judgment and motions for judgment on the pleadings in mind, the correctness of the trial court's ruling turns on whether the insurance policies incorporated in Columbia's cross-complaint, appropriate judicial notice, or any concession by Columbia negate beyond reasonable controversy Columbia's express allegation that the Northwestern policy indemnifies Coca Cola's loss in excess of a deductible of $1 million.

A

*The Insurance Contracts*

██ Given the liberality of California's parol evidence rule,[3] a judgment on the pleadings granted in reliance on the terminology of an incorporated complex contract to negate an express allegation of its meaning is highly suspect. The motion for judgment on the pleadings can be granted only if the instrument incorporated by reference conclusively negates the express allegation in the pleading, and except in the extraordinary case, conclusive negation is unlikely because of the inevitable prospect that parol evidence may lead to an interpretation of the contract consistent with the pleading's express allegation.

██ In this respect this case is not extraordinary. Northwestern policy No. CLA255714 is by no means unambiguous as Northwestern contends. More a vehicle for Jesuitical or Talmudic debate than a definition of the rights and obligations of the parties to the contract, the policy crosses one's eyes and boggles one's mind.

A combined single limit endorsement indemnifies against both something called "damage" and something called "ultimate net loss" and imposes a total liability of Northwestern to the extent of $1 million as the result of any one occurrence. An indemnification endorsement obligates Northwestern to indemnify Coca Cola for "ultimate net loss" because of bodily injury caused by an occurrence, and an ultimate net loss endorsement defines the term as the total sum which Coca Cola may pay as a consequence of an occurrence causing personal injury including legal and adjusting expenses and includes damage within its definition.

A deductible endorsement provides that $1 million shall be deducted from any loss, including defense coverage, as a result of each occurrence. North-

---

[3]The traditional parol evidence rule which allows extrinsic evidence to give meaning to a writing only when the writing is ambiguous (*Estate of Donnellan* (1912) 164 Cal. 14, 17 [127 P. 166]; *Gibson* v. *De La Salle Institute* (1944) 66 Cal.App.2d 609, 619 [152 P.2d 774]) was liberalized in 1968 by the California Supreme Court's rejection of the "plain meaning rule." Hence extrinsic evidence relevant to interpretation can no longer be barred simply because of a judicial determination that a writing appears to have only one interpretation. (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]; *Southern Pacific Land Co.* v. *Westlake Farms, Inc.* (1987) 188 Cal.App.3d 807, 815 [233 Cal.Rptr. 794].) Parol evidence is now admissible to show mutually shared meaning of words used irrespective of their ordinary meaning. (*Pacific Gas & E. Co.* v. *Thomas Drayage etc. Co.*, *supra*, at p. 37; *Estate of Russell* (1968) 69 Cal.2d 200, 209 [70 Cal.Rptr. 561, 444 P.2d 353].) Parol evidence of custom and usage is similarly admissible to interpret the written words. (*Paramount Television Productions, Inc.* v. *Bill Derman Productions* (1968) 258 Cal.App.2d 1, 10 [65 Cal.Rptr. 473].)

western reads this deductible endorsement as taking away what is given by the combined single limit, indemnification, and ultimate net loss endorsements.

There are at least two problems inherent in Northwestern's interpretation. First, using this roundabout method to reach a construction which could have been stated in a single sentence, or for that matter by not issuing the policy at all, does not make a great deal of sense. Second, the term "ultimate net loss" as used in the endorsements which provide for coverage is a term of art, a phrase defined by the policy. The deductible endorsement, that which taketh away, uses different terminology. This endorsement refers simply to "the loss." Presumably "the loss," an undefined term in the policy, has a different meaning than "ultimate net loss," a defined term, and parol evidence is certainly admissible to resolve: (1) whether the two different terms have the same or different meanings; and (2) if the meanings are different what the phrase "the loss" connotes. One possible construction is that the provisions of the policy which provide coverage of "ultimate net loss" are triggered after Coca Cola has absorbed "the loss" as this phrase is used in the deductible endorsement.

Northwestern apparently recognizes the first of these problems—the question of the awkwardness of achieving an absence of insurance coverage by first giving it and then taking it away in the same instrument. It engages in its own resolution of the ambiguity by construing the policy as on its face as a "fronting policy"—a policy which does not indemnify the insured but which is issued to satisfy financial responsibility laws of various states by guaranteeing to third persons who are injured that their claims against Coca Cola will be paid. In short it is Northwestern's position that its policy, labeled as one of indemnity, and phrased as such, is a surety instrument.

This interpretation of the policy by Northwestern is deficient for the purposes of supporting a judgment on the pleadings. The construction suggested by Northwestern is not the only meaning to which the policy is susceptible, parol evidence will be admissible to interpret the policy, and it is Northwestern's burden on its motion for judgment on the pleadings to establish conclusively an interpretation of the policy which negates the construction expressly alleged in the body of the second amended crosscomplaint.

Northwestern's reliance on *United States Elevator Corp.* v. *Associated Internat. Ins. Co.* (1989) 215 Cal.App.3d 636 [263 Cal.Rptr. 760] (hereinafter *United*) to support its position that as a matter of law a deductible in an insurance policy which equals the liability limit leaves the policyholder

uninsured is misplaced. First, the statement in *United* to which Northwestern refers recites a concession of the parties for the purpose of that case and not a holding of the court. (*United* at p. 640.) Second, *United* involves an appeal from a judgment after a trial at which parol evidence to construe the relevant insurance policies was received. (*United* at pp. 644-645.) Third and most significant, the *United* court states unequivocally, "[T]he rules of insurance contract interpretation cannot be erroneously used . . . to construe . . . ambiguity so as to effectively minimize the primary coverage simply in order to trigger the application of a separate excess policy." (*United* at p. 649.)

Northwestern argues also that the language of the Mission policy confirms its assertion that the deductible endorsement converts the indemnity coverage afforded by the remainder of the Northwestern policy to an obligation of surety. It contends that schedule A attached to the Mission policy incorporated by reference in the second amended cross-complaint supports such an interpretation. As to automobile insurance this schedule A, entitled "Schedule of Underlying Insurance," lists Northwestern policy No. CLA255714 with limits of liability of $1 million "each occurrence." Northwestern reads this language as confirming that excess insurance is triggered by a $1 million loss to Coca Cola because there is no reference to what Northwestern characterizes as the "self-insured retention in Schedule A."

This argument also fails. Assuming that Northwestern is correct in its assertion that the Mission policy schedule A might somehow support Northwestern's interpretation of its policy No. CLA255714, the schedule A language falls well short of doing so conclusively. To the contrary, the language of schedule A of the Mission policy when read in conjunction with schedule B of this policy is at least susceptible of a meaning contrary to that argued by Northwestern. Schedule B of the Mission policy which deals with insurance other than automobile insurance refers to a "self retained limit." The reference in schedule A of the policy to the Northwestern insurance as underlying the Mission policy with no reference to a self-retention by Coca Cola supports the inference that the $1 million deductible in the Northwestern policy was what it is labeled and that this policy is not one of surety for a self-retained obligation but rather is first level insurance in the amount of $1 million over a $1 million deductible. Having used the term self-retention in schedule B but not in schedule A, Coca Cola can be said to have recognized that the Northwestern policy was one of indemnity. In short, the question cries out for enlightenment by further parol evidence produced at a trial.

We thus conclude that on its face Columbia's second amended cross-complaint states a good cause of action against Coca Cola unrefuted by the terms of documents incorporated into this pleading by reference. We turn now to examination of other information properly before the trial court despite the strict confines of a motion for judgment on the pleadings to determine if this information in conjunction with Columbia's second amended cross-complaint sustains the trial court's grant of Northwestern's motion for judgment on the pleadings.

B

*Judicial Notice*

Northwestern asserts that judicial notice establishes that the mutually shared intent of Coca Cola and Northwestern was to treat policy No. CLA255714 as a "fronting" and not an indemnity policy. The judicially noticed information on which Northwestern relies consists of: (1) Coca Cola's failure to include Northwestern in its suit against Columbia; and (2) Coca Cola's characterization of insurance contained in Coca Cola's papers filed in connection with its summary judgment motion.

If we assume that judicial notice could be taken of this information it nevertheless lacks the conclusivity required in a motion for judgment on the pleadings to defeat the allegations of Columbia's second amended cross-complaint. But this assumption is overgenerous to Northwestern. ▪ While judicial notice is appropriate to establish the existence of the material in court records, judicial notice of the content of these records for the purpose of establishing truth of the content is distinctly improper.

Judicial notice of the truth of the content of court records is appropriate only when the existence of the record itself precludes contravention of that which is recited in it, for example where findings of fact, conclusions of law or judgments bind a party for purposes of res judicata or collateral estoppel. (2 Jefferson, Cal. Evidence Benchbook, *supra*, Judicial Notice, § 47.2, pp. 1757-1758; *In re Tanya F.* (1980) 111 Cal.App.3d 436, 440 [168 Cal.Rptr. 713].) Otherwise judicial notice for the truth of the content of court records is not appropriate either because the truth of the content is reasonably subject to dispute (1 Witkin, Cal. Evidence, *supra*, Judicial Note § 80, p. 75), or because the content is hearsay (*Day v. Sharp* (1975) 50 Cal.App.3d 904, 914 [123 Cal.Rptr. 918]; *In re David C.* (1984) 152 Cal.App.3d 1189, 1205 [200 Cal.Rptr. 115]). ▪ Here the content of the file in the instant case which Northwestern asserts should be judicially noticed fails for both these reasons.

*Columbia's Concession*

In its response to Northwestern's motion for judgment on the pleadings, Columbia attached to its points and authorities the hold harmless agreement to which we refer in section II D (*ante*, at p. 466) and made the concession that ultimately this agreement may protect Northwestern against claims made by Coca Cola. Northwestern argues here that the agreement and concession establish a mutual intent of Coca Cola and Northwestern that policy No. CLA255714 is not one of indemnity with a deductible, but rather only a surety contract.

If we were reviewing a trial court determination granting summary judgment on a motion in which Columbia's response failed to address these matters with an adequate factual showing, we would view the matter differently. Having been placed in the record by Columbia, this material would properly be considered against it on a motion for summary judgment. Hypothetically we might affirm such a judgment on the record here.[4] But this is a judgment resulting from the trial court's grant of a motion for judgment on the pleadings. The copy of the hold harmless agreement and the concession in the points and authorities are evidentiary admissions, not judicial admissions in pleadings, and hence are not conclusive on Columbia. Not having been placed on notice that it would be required to rebut the impact of the hold harmless agreement at the hearing on Northwestern's motion for judgment on the pleadings, Columbia cannot be faulted for not having done so. In this appeal lack of conclusivity of the evidentiary admissions suffices to defeat Northwestern's motion.

The existence of the hold harmless agreement does not render harmless the trial court's error in granting the motion. There lurks in the record the possibility that irrespective of the hold harmless agreement's consequences as between Northwestern and Coca Cola (the proposition provisionally admitted by Columbia) Northwestern may be estopped to assert the agreement against Columbia or Mission from whom Columbia's liability derives. There is an anomaly in the most significant aspect of the Northwestern policy being incorporated in a separate agreement rather than as an endorsement to policy No. CLA255714 itself where matter of much lesser import is

---

[4]We do not intimate that we necessarily would affirm a summary judgment on a record similar to that before us in the case at bench. It is odd that in an insurance policy fraught with endorsement after endorsement, its most significant aspect, the conversion of the policy from the indemnity instrument it purports to be into a surety arrangement, is included in a separate agreement which may or may not have been disclosed along with the policy to the excess insurers. This oddity could cause some concern if we were considering a motion for summary judgment unaided by further factual showing.

expressed by several endorsements. The anomaly is amplified by Northwestern's vigorous contention on this appeal that the hold harmless agreement accomplished nothing—that its policy afforded no indemnity coverage to Coca Cola. Northwestern's reasons for this odd bit of draftsmanship may have been benign. But the process employed clearly offered the opportunity to present its policy to the excess insurers in a false light. These are matters appropriately determined at trial, but not on a motion for judgment on the pleadings.

## VIII

### DISPOSITION

The judgment is reversed.

Todd, Acting P. J., and Nares, J., concurred.

A petition for a rehearing was denied July 17, 1991, and respondent's petition for review by the Supreme Court was denied September 18, 1991.