Val John GREEN, Plaintiff–Appellee,

v.

Gordon L. HALL, Personal Representative of the Estate of Michael D. Coffman; The Estate of Michael D. Coffman, Defendants–Appellants.

Richard M. ROBERTSON; The Salvation Army, a non-profit corporation, Defendants,

v.

Gordon L. HALL, Personal Representative of the Estate of Michael D. Coffman; The Estate of Michael D. Coffman, Third-party-plaintiffs–Appellants,

v.

UNITED STATES of America, Third-party-defendant–Appellee.

Val John GREEN, Plaintiff–Appellee,

v.

Richard M. ROBERTSON; The Salvation Army, a non-profit corporation, Defendants,

v.

Gordon L. HALL, Personal Representative of the Estate of Michael D. Coffman; The Estate of Michael D. Coffman,

Defendants-third-party-plaintiffs-
appellants,

v.

UNITED STATES of America, Third-
party-defendant–Third-party-
plaintiff–Appellee.

Nos. 92–35280, 92–36770.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 1, 1993.

Decided Oct. 29, 1993.

Thomas J. Flaherty, Hillsboro, OR, for plaintiff-appellee.

William W. Younger, Asst. U.S. Atty., Portland, OR, for third-party plaintiff-defendant-appellee.

Phillip D. Chadsey, Stoel, Rives, Boley, Jones & Grey, Portland, OR, for defendants third-party plaintiffs appellants.

Before: BROWNING, SCHROEDER, and HALL, Circuit Judges.

PER CURIAM:

Plaintiff Val Green was a passenger in an automobile driven by Michael Coffman, a fellow member of the Army Reserves, when an accident occurred, killing Coffman and seriously injuring Green. Green sued Coffman's estate in state court for damages. The estate added the United States as a third-party defendant, removed the action to federal court, and sought certification from the Attorney General that Coffman was acting within the scope of his employment as a Reservist at the time of the accident. The Attorney General denied certification, and the estate petitioned the district court to find and certify that Coffman was acting within the scope of his employment. The magistrate judge assigned to the case denied the petition after a hearing at which he received documentary evidence but heard no live testimony. The magistrate judge also rejected the estate's argument that it was immune from Green's suit under the *Feres* doctrine. The district court adopted the findings and recommendation of the magistrate judge. The estate appeals both rulings. We affirm.

I

On July 7–9, 1989, Green and Coffman were required to attend a weekend drill and training session at the Portland Air Base. Friday night they participated in a parachute jump, returning to the base at 3:00 AM. Coffman and Green slept at the base, while other Reservists apparently slept at home that night. All had to report for formation at either 9:00 AM or 9:30 AM the next morning. The parties apparently agree that Coffman, Green, and Sergeant McMahan, another Reservist, left the base at about 7:00 AM to eat breakfast, preferring restaurant food to the packaged "meals ready to eat" offered by the Army. Since none of them had cars big enough for three people, Green and Coffman travelled in Coffman's car, McMahan in his own. The record indicates that Green and Coffman may have had other purposes on their morning trip. Some evidence indicates Green intended to return to his house to retrieve materials he would need for a training session he was to give later in the day,

and some evidence indicates that Green, Coffman, and McMahan intended to bring doughnuts back to the other members of their company. Evidence also indicates that Coffman and Green returned to the base and left again, since they were seen leaving the base at about 8:30 AM.

At approximately 8:45 AM, Coffman's car collided with a Salvation Army truck. Coffman was killed, and Green was seriously injured. Coffman's car was headed west, away from the base, two blocks shy of Mary Jane's Coffee Shop, one of three places the Reservists had agreed to try for breakfast. The car was on one of several possible routes from the base to Green's house, although they had passed faster routes. No training materials or doughnuts were found in the car.

## II

### A

■ The Federal Employees Liability Reform and Tort Compensation Act ("FELRTCA") immunizes United States employees from liability for their "negligent or wrongful act[s] or omission[s] ... while acting within the scope of [their] office or employment." 28 U.S.C. § 2679(b)(1). The Attorney General certifies whether a United States employee was acting within the scope of his or her employment at the time of an event giving rise to a civil claim. 28 U.S.C. § 2679(d)(1), (2). Once certification is given in a civil action, FELRTCA requires the substitution of the United States as the defendant, and, if the action was originally filed in state court, the removal of the action to federal court. *Id.* Under the terms of FELRTCA, the substitution of the United States leaves the plaintiff with a single avenue of recovery, the Federal Torts Claim Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq.* 28 U.S.C. § 2679(d)(4).

■ A plaintiff may challenge the Attorney General's scope of employment certification in the district court. *Meridian Int'l. Logistics, Inc. v. United States*, 939 F.2d 740, 745 (9th Cir.1991). Likewise, if the Attorney General denies certification, as he did here, the employee may petition the court for certification. 28 U.S.C. § 2679(d)(3). The Attorney General's decision regarding scope of employment certification is subject to *de novo* review in both the district court and on appeal. *Meridian*, 939 F.2d at 745. Where facts relevant to this inquiry are in dispute, however, we review the district court's factual findings for clear error.[1] *Nadler v. Mann*, 951 F.2d 301, 305 (11th Cir.1992); *McCluggage v. United States*, 392 F.2d 395, 397 (6th Cir.1968).

■ Though the certification issued by the Attorney General is subject to *de novo* review, FELRTCA grants the Attorney General the right to decide the scope of employment issue in the first instance. The Attorney General's decision regarding scope of employment certification is conclusive unless challenged. 28 U.S.C. § 2679(d)(1)–(4).[2] Accordingly, the party seeking review bears the burden of presenting evidence and disproving the Attorney General's decision to grant or deny scope of employment certification by a preponderance of the evidence. *See S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1543 (11th Cir.1990) (burden of proof lies with party seeking to "alter[ ] the status quo" as determined by the Attorney General), *amended*, 924 F.2d 1555 (11th Cir.1991); *accord Hamrick v. Franklin*, 931 F.2d 1209, 1211 (7th Cir.1991).

### B

■ In determining whether a United States employee acted within the scope of his or her office or employment within the meaning of FELRTCA, we apply the respondeat

---

**1.** The standard is clear error even where the district court was faced with a purely written record. Fed.R.Civ.P. 52(a); *Phonetele, Inc. v. American Tel. & Tel. Co.*, 889 F.2d 224, 229 (9th Cir.1989).

**2.** The presumption in favor of the Attorney General's certification decision is clear from the mandatory terms of FELRTCA: "Upon certification by the Attorney General ..., any civil action [arising out of a government employee's official duties] *shall* be deemed an action against the United States...." 28 U.S.C. § 2679(d)(1) (emphasis added). *See S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1543 (11th Cir.1990).

superior principles of the state in which the alleged tort occurred, in this case Oregon. *Pelletier v. Federal Home Loan Bank,* 968 F.2d 865, 876 (9th Cir.1992); *Proietti v. Civiletti,* 603 F.2d 88, 90 (9th Cir.1979). Oregon's law on the subject is clear:

> In deciding whether an employee was acting within the scope of his employment, the factors to be considered are [1] whether the act in question is of a kind the employee was hired to perform, [2] whether the act occurred substantially within the authorized limits of time and space, and [3] whether the employee was motivated, at least in part, by a purpose to serve the employer.

*Stanfield v. Laccoarce,* 284 Or. 651, 588 P.2d 1271, 1274 (1978). In applying these factors, the "ultimate question is whether or not it is just that the loss resulting from the servant's acts should be considered as one of the normal risks to be borne by the business in which the servant is employed." *Id.* (quoting Restatement (Second) of Agency § 229, comment a (1958)).

The parties dispute both the nature and purpose of Coffman's and Green's trip. Each cites evidence in the record indicating that Coffman and Green were headed to eat breakfast off the base, to get doughnuts for the rest of the company, to retrieve training materials from Green's house, or a combination of the three. The magistrate judge reviewed this evidence and concluded that the estate had not shown that it was more likely than not that Coffman was driving Green to his house to retrieve training materials. Since the estate had failed to meet its burden of proof, the magistrate judge concluded that Coffman and Green left the base to breakfast or to get doughnuts for others.

This conclusion is not clearly erroneous. The deposition testimony and affidavits presented to the magistrate judge suggest that the two Reservists could have intended to pick up training materials, but they equally support the conclusion that the Reservists were after doughnuts or just breakfast. For instance, Coffman and Green left the base at 7:00 AM, but the accident occurred at 8:45 AM, a few minutes from the base, not on a direct route to Green's house, and without any training materials in the car.

Given the magistrate judge's findings, Coffman was not acting within the scope of his employment under Oregon law. The act Coffman was performing at the time of the accident, driving with a fellow Reservist either to breakfast or to get doughnuts for the rest of the company, was not an act "of a kind [he] was hired to perform" by the Army Reserves.[3] *Stanfield,* 588 P.2d at 1274. The Army provided food at the base which, although perhaps unpalatable, some of the Reservists apparently ate. Even if the Army Reserves derived some incidental benefit because Coffman supplied edible food to the rest of the company, that benefit does not transform Coffman's personal trip into an employment-related trip. *See Gossett v. Simonson,* 243 Or. 16, 411 P.2d 277, 281 (1966). Coffman was not acting "substantially within the [employer's] authorized limits of time and space" at the time of the accident because he had no duties from 3:00 AM to 9:00 AM or 9:30 AM and was free to leave the base. *Stanfield,* 588 P.2d at 1274. The only purpose for Coffman's trip that would suggest a motivation to serve his employer, a trip to Green's house to retrieve training materials, has been rejected by the magistrate judge.

### III

#### A

The United States is not liable under the FTCA for "injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950). This circuit has extended *Feres* to "suits between individual members of the military, recognizing an 'intramilitary immunity' from suits based on injuries sustained incident to service." *Lutz v. Secre-*

---

3. The Army's administrative finding that Coffman was acting in the "line of duty" the morning of the accident is irrelevant since it addresses whether Coffman was engaged in misconduct and his eligibility for medical benefits rather than whether he was acting within the scope of his employment under relevant state law. *Merritt v. United States,* 332 F.2d 397, 398 (1st Cir. 1964).

*tary of the Air Force,* 944 F.2d 1477, 1480–81 (9th Cir.1991). Thus, the crucial question here is whether Green's injuries were sustained "incident to service."

We review *de novo* whether "the *Feres* doctrine is applicable to the facts reflected in the record." *McGowan v. Scoggins,* 890 F.2d 128, 129 (9th Cir.1989). The parties stipulated that the magistrate judge decide the *Feres* issue according to the standards for summary judgment. Accordingly, we draw all justifiable factual inferences in favor of the estate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

### B

■ We conclude Green was not injured "incident to service" within the meaning of the *Feres* doctrine. Green was injured while off base and before he was due at morning formation. His injuries were therefore related to his military status only "in the sense that all human events depend upon what has already transpired," which is insufficient. *Brooks v. United States,* 337 U.S. 49, 52, 69 S.Ct. 918, 920, 93 L.Ed. 1200 (1949); *see also Estate of McAllister v. United States,* 942 F.2d 1473, 1479–80 (9th Cir.1991) (question is whether injuries are related to "individual's *status* as a member of the military") (internal quotations omitted). Green's trip was also a "distinctly nonmilitary act[ ]," since it was not done under orders, was not intended to benefit the military, and did not occur on military property. *Lutz,* 944 F.2d at 1487 (citing *Durant v. Neneman,* 884 F.2d 1350, 1354 (10th Cir.1989)).

**AFFIRMED.**