**Nancy L. BUCHANAN, Plaintiff,**

v.

**U.S. DEPT. OF HEALTH AND HUMAN SERVICES, et al., Defendants.**

**No. C 00–04701 BZ.**

United States District Court, N.D. California.

Oct. 31, 2001.

Pano Stephens, Esq., Ukiah, CA, for Plaintiff.

Jocelyn Burton, Richard P. Laverdure, Office of the U.S. Attorney, San Francisco, CA, George Forman, Esq., Patricia A. Prochaska, Esq., Forman & Prochaska, San Rafael, CA, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION TO DISMISS

ZIMMERMAN, United States Magistrate Judge.

After being involved in an automobile collision with Pamela Zaste, the tribal administrator for the Guidiville Indian Rancheria ("Guidiville"), plaintiff Nancy Buchanan sued Ms. Zaste, Guidiville and the United States Department of Health and Human Services ("United States") pursuant to the Federal Tort Claims Act ("FTCA").[1]

At the time of the accident, Ms. Zaste was transporting Gregory Zaste, a member of the tribe who also happens to be her son, to a court-ordered drug test using a government vehicle. Plaintiff alleges that Mr. Zaste's court-ordered drug test was part of a broader treatment plan contemplated by the Self–Determination Agreement ("Agreement") between Guidiville and the United States. Plaintiff argues that because Ms. Zaste was acting within the scope of her employment pursuant to the Agreement, plaintiff is entitled to damages from the United States under the FTCA.

The U.S. Attorney General decided not to certify Ms. Zaste as a federal employee acting within the scope of her employment. (Stephens Decl. in Supp. of Pl.'s Mot. for Summ. J., Ex. C.). In challenging the scope of employment certification, plaintiff

bears the burden of disproving the Attorney General's decision by a preponderance of the evidence. *See Green v. Hall,* 8 F.3d 695, 698 (9th Cir.1993). The district court reviews the certification decision *de novo. See id.* Plaintiff now moves for summary judgment on the issue of whether Ms. Zaste was acting within the scope of her employment.

Defendant United States has filed a cross motion under Federal Rule of Civil Procedure 12(b)(1) seeking a dismissal for lack of subject matter jurisdiction.[2] According to defendant, Ms. Zaste was acting outside the scope of her employment as defined by the Agreement with the United States, thereby precluding plaintiff from invoking the FTCA exception to sovereign immunity.

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if a reasonable jury could return a verdict in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court does not make credibility determinations or weigh conflicting evidence, and views the evidence in the light most favorable to the nonmoving party. *See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–631 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Coro.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

---

1. The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings including entry of final judgment pursuant to 28 U.S.C. § 636(c).

2. Defendant has also moved to strike the Zaste and Pomilia declarations. After reviewing the declarations, defendant's motion to strike is **DENIED**.

"When 'ruling on a jurisdictional motion involving factual issues which also go to the merits, the trial court should employ the standard applicable to a motion for summary judgment ... [T]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1558 (9th Cir.1987) (quoting *Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir.1983)). Here, the court will have subject matter jurisdiction under the FTCA only if Ms. Zaste was acting within the scope of her employment under the Agreement. Thus, the facts relevant to determining subject matter jurisdiction directly implicate the facts necessary to a finding of liability against the defendant under the FTCA.

■ Whether Ms. Zaste was acting within the course and scope of her employment presents two related questions. The first question this court must decide is whether transporting a member of the Guidiville tribe to a court-ordered drug test is an act which is covered by the Agreement. Put another way, if Mr. Zaste had been driven by someone specifically hired by Guidiville to provide transportation to clients required to undergo drug testing as a condition of probation, would that person have been engaged in conduct covered by the Agreement?

The contract between the United States and Guidiville requires Guidiville to provide a broad range of health and human services for its tribal members, including extensive alcohol and drug abuse prevention services. (Stephens Decl. in Supp. of Pl.'s Mot. for Summ. J., Ex. A ("Agreement") at 4–8). Among other services, the Agreement provides for the collection of "pertinent health data from client", the "assessment and planning of treatment for client based on individual client need", and "supportive services, such as assisting the client to obtain social, medical, educational or employment services." (Agreement at 5). The accompanying Scope of Work document also provides for a wide range of counseling services and for "disease prevention, health education, and *monitoring of high risk service users.*" (Stephens Decl. in Supp. of Pl.'s Mot. for Summ. J., Ex. B ("Scope of Work") at 1, 3) (emphasis added). Both documents also require the transportation of patients for health related reasons. (Agreement at 12; Scope of Work at 3).

■ While the Agreement does not expressly provide for the transportation of a member to his court-ordered drug test, its section on purpose states that it "shall be liberally construed for the benefit of the Contractor [Guidiville] to transfer the funding and the following related functions, services, activities, and programs... including all related administrative functions, from the Federal Government to the Contractor." (Agreement at 2). Assistance in interpreting the Agreement is further provided by the undisputed testimony of the custom and course of dealing between Guidiville and the United States in acting under and interpreting the Agreement. "Where contractual language ... suggests several speculative interpretations, the scope of the language must be read in accordance with the parties' contemporaneous construction, and ... the parties' interpretation and performance of the contract may be relevant evidence of the contract itself." *United States ex. rel. Oliver v. The Parsons Co.*, 195 F.3d 457, 459 (9th Cir.1999), *cert. denied*, 530 U.S. 1228, 120 S.Ct. 2657, 147 L.Ed.2d 272 (2000) (citations omitted). *See also Columbia Casualty Co. v. Northwestern Nat'l Ins. Co.*, 231 Cal.App.3d 457, 470 n. 3, 282 Cal.Rptr. 389 (1991) (noting that since the liberalization of California's parol evidence rule, parol evidence of custom

and usage is admissible to interpret the meaning of written words). It is especially informative that Guidiville's staff interpreted the Agreement to authorize the transport of clients to court-ordered drug tests if the need ever arose. (Guidiville Dep. at 33; Stephens Decl. in Opp'n to Def.'s Mot. to Dismiss, Ex. 1 at 28–29; Laverdure Decl., Ex. A at 81–82, 88–89). Taken together, I conclude that the evidence offered by plaintiff unequivocally demonstrates that the Agreement between Guidiville and the United States includes the ability of the tribe to work together with the judicial system in an effort to monitor Mr. Zaste's rehabilitation.[3]

■ The second question this court must decide is whether Ms. Zaste could have provided such transportation to Mr. Zaste within the course and scope of her employment as tribal administrator. The language of the FTCA is unambiguous, waiving the government's sovereign immunity by covering injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment ..." 28 U.S.C. § 1346(b). Although ordinarily waivers of sovereign immunity are strictly construed in favor of the government, the FTCA has been characterized as a broad waiver of sovereign immunity. See Berkovitz v. U.S., 486 U.S. 531, 535, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); Reed v. U.S. Dep't of the Interior, 231 F.3d 501, 504 (2000). The determination of the scope of employment for purposes of United States liability is governed by respondeat superior principles of the state in which the alleged tort was committed. See McLachlan v. Bell, 261 F.3d 908, 911 (9th Cir.2001) (citing Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 420, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995)). The conduct at issue occurred in Ukiah, California, so California law controls the scope of employment issue.

■ California interprets the scope of employment issue broadly under its respondeat superior doctrine. See Farmers Ins. Group v. County of Santa Clara, 11 Cal.4th 992, 1003–04, 47 Cal.Rptr.2d 478, 906 P.2d 440 (1995). An employee's conduct is foreseeable and therefore within the scope of employment if it "is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." Id. Furthermore,

"Where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly nor indirectly could he have been serving his employer."

Id. (quoting John R. v. Oakland Unified School Dist., 48 Cal.3d 438, 447, 256 Cal. Rptr. 766, 769 P.2d 948 (1989)) (emphasis added). See also Perez v. Van Groningen & Sons, Inc., 41 Cal.3d 962, 970, 227 Cal. Rptr. 106, 719 P.2d 676 (1986) (quoting Lockheed Aircraft Corp., v. Indus. Accident Comm'n, 28 Cal.2d 756, 758–759, 172 P.2d 1 (1946)).

Defendant argues that neither Mr. Zaste's treatment plan nor Ms. Zaste's job duties permit plaintiff to characterize Ms. Zaste's transport of her son to a court-ordered drug test as falling within the scope of her employment. Defendant of-

---

**3.** It is immaterial that language in a former agreement on providing that Guidiville's outreach services include jail and court visits was deleted in the current version of the Agreement. Jail and court visits are quite different from a court-ordered drug test designed to monitor a tribe member's health and welfare. The Agreement was created for this latter purpose.

fers little evidence to support its contention that Mr. Zaste's treatment plan with Guidiville did not include the court-ordered drug test. Conversely, plaintiff provides a wealth of uncontradicted testimony from the tribal chairwoman, the tribal administrator, the tribal health coordinator and Mr. Zaste's probation officer, in addition to Mr. Zaste's counseling records, all of which assert that Mr. Zaste's treatment plan with the tribe included court-ordered drug monitoring. (Stephens Decl. in Supp. of Pl.'s Mot. for Summ. J., Ex. E ("Guidiville Dep.") at 32–33; Zaste Decl. at 2; Laverdure Decl., Ex. A at 82; Pomilia Decl. at 2; Zaste Health Records (under seal) at 34, 39, 41).

Defendant also fails to raise a genuine issue as to Ms. Zaste's duties as tribal administrator. The failure of Ms. Zaste's job description to specifically mention driving duties is not enough to overcome the otherwise broad description of her administrative duties, as well as her own testimony and the testimony of the tribal chairwoman. (Fitilis Decl., Ex. F; Stephens Decl. in Supp. of Pl.'s Mot. for Summ. J., Ex. F ("Zaste Dep.") at 10–12, 17, 30; Zaste Decl. at 1–2; Guidiville Dep. at 21–22, 25; Laverdure Decl., Ex. A at 53–54). The fact that the tribe had roughly eleven employees at the time of the incident further bolsters the flexible nature of Ms. Zaste's duties.

Defendant responds that even if Ms. Zaste's duties included driving Mr. Zaste to his drug test, that duty only arose when "all other" staff were unavailable. As proof, defendant offers the deposition testimony of Ms. Zaste and Guidiville's chairwoman. While Chairwoman Sanchez did testify that she agreed with a written statement by Council Member Verdugo that Ms. Zaste's transportation duties arose "when all other staff is unavailable," (Guidiville Dep. at 53), it is clear from her subsequent testimony that the staff she

had in mind were the three members of the health department. (Guidiville Dep. at 54–56). Ms. Zaste likewise testified that she agreed with Ms. Verdugo's statement; she does not appear to have been asked whether she had the entire tribe in mind or just the health department. This evidence does not rise to the level sufficient to establish a genuine issue of material fact. A reasonable jury would find that "all other staff" in the context of the tribe's treatment plans refers to the three staff members in the health department, all of whom were unavailable the morning of the accident. (Guidiville Dep. at 54, 97–98; Zaste Decl. at 2).

Considering the broad purpose of the Agreement, Ms. Zaste's decision to transport her son to his drug test falls squarely within the scope of her employment under permissive California law. It is entirely foreseeable that the tribal administrator would be required to drive a tribe member to his court-ordered drug test as part of a treatment plan under the Agreement. Indeed, the undisputed testimony and evidence show that Ms. Zaste's actions were expected. Although an aspect of Ms. Zaste's decision may have been personal because her son was involved, it cannot be said as a matter of law that her actions did not directly or indirectly serve her employer. *See John R.*, 48 Cal.3d at 447, 256 Cal.Rptr. 766, 769 P.2d 948. On the contrary, the evidence indicates that she would have ignored her employer's treatment guidelines had she chosen not to transport Mr. Zaste to his appointment. The tribe is entitled to make decisions about its clients' participation in various aspects of their treatment plans. If one such decision allows for the tribal administrator to transport a client to a court-ordered drug test in conjunction with the client's treatment program, the fact that the administrator is also the client's mother should not hinder the broad discretion

properly delegated to Guidiville under the Agreement with the United States.

If the sole issue to be decided was whether the United States had waived its sovereign immunity in general, defendant would have a stronger argument for dismissing the complaint. The facts in the case at bar, however, present an entirely different picture. Not only has the United States consented to a broad waiver of immunity under the FTCA, but the applicable California respondeat superior law is permissive in finding an employer vicariously liable for its employees' actions. Plaintiff has satisfied her burden by proving by a preponderance of the evidence that both the Agreement and Ms. Zaste's duties as tribal administrator include the transportation of a client to a court-ordered drug test. Accordingly, I find that Ms. Zaste was acting within the scope of her employment when she drove Mr. Zaste to his scheduled drug test. **IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment is **GRANTED** and defendant's cross-motion to dismiss is **DENIED**.