**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KEITH J. JACKSON,
                *Plaintiff-Appellant,*

v.

RICHARD A. TATE; RANDY L.
DeCOTEAU,
          *Defendants-Appellees.*

No. 10-35355

D.C. No.
2:09-cv-00874-RSL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, Chief District Judge, Presiding

Argued and Submitted
April 11, 2011—Seattle, Washington

Filed June 2, 2011

Before: Andrew J. Kleinfeld, A. Wallace Tashima, and
Barry G. Silverman, Circuit Judges.

Opinion by Judge Silverman

---

**COUNSEL**

James W. Beck (argued), Eric D. Gilman, Gordon Thomas Honeywell LLP, Tacoma, Washington, for the appellant.

Jenny A. Durkan, United States Attorney, Philip H. Lynch (argued), Assistant United States Attorney, Seattle, Washington, for the appellees.

---

**OPINION**

SILVERMAN, Circuit Judge:

We hold today that the *Feres* doctrine does not bar a discharged serviceman, who remains in the Individual Ready Reserve, from suing active duty National Guard recruiters whom he accuses of forging his signature on re-enlistment papers. *Feres* does not apply because the alleged injury is not "incident to" the plaintiff's service; indeed, the tortious conduct complained of allegedly occurred as a predicate to agreeing to a new service obligation, unrelated to any benefit or duty connected to any service obligation he has already incurred. We also hold that the two National Guard recruiters

meet the prima facie test as federal employees under the Westfall Act.

## BACKGROUND

### I.   Jackson's Duty Status

Keith Jackson appeals from the district court order dismissing for lack of subject matter jurisdiction his suit against Sergeant First Class Richard Tate and Captain Randy DeCoteau of the Washington Army National Guard. Jackson's complaint asserts federal constitutional and state common law torts arising out of allegations that Tate and DeCoteau fraudulently re-enlisted Jackson into the Guard.

Jackson was honorably discharged from the Washington Army National Guard on May 16, 2006. Jackson's discharge notice from the Guard states that he had been assigned to "[United States Army Reserve] Control Group (Reinforcement) . . . to complete [his] remaining service obligation with an expiration date of [July 18, 2008]." United States Army Reserve control groups are part of the Individual Ready Reserve.[1] Certain members of the IRR are "subject to being ordered to active duty involuntarily in accordance with [10 U.S.C. § 12304]," 10 U.S.C. § 10144(b)(1), "when the President determines that it is necessary to augment the active

---

[1]The Individual Ready Reserve is defined as follows:

> A manpower pool consisting of individuals who have had training and have previously served in the active forces or in the Selected Reserve. The IRR consists of people who must fulfill their Military Service Obligation (MSO) . . . , members fulfilling a service obligation incurred via contract, and those who have fulfilled their MSO and who voluntarily remain in the IRR. IRR members are subject to involuntary active duty (AD) for training and fulfillment of mobilization requirements . . . .

*Seabury v. United States*, No. 09-10622-JGD, 2010 WL 1528615 at *2 (D. Mass April 15, 2010) (citing Department of Defense Instruction 1235.13).

forces for any operational mission or that it is necessary" to respond to "a use or threatened use of a weapon of mass destruction; or a terrorist attack or threatened terrorist attack in the United States." 10 U.S.C. § 12304(a)-(b). "IRR members do not participate in any regularly scheduled training, and they are not paid for their membership in the IRR."[2]

## II.   Events Giving Rise to Jackson's Complaint

Jackson alleges the following: on or about June 24, 2006, Tate and DeCoteau completed paperwork re-enlisting Jackson for two years and four weeks of service with the Washington Army National Guard. In this paperwork, Tate and DeCoteau swore under oath that Jackson was present before them in Issaquah, Washington; was personally administered the required oath; and was observed signing the enlistment contract. Jackson, however, alleges that he was not in Issaquah, Washington at that time, but working as a private contractor in Iraq. Upon discovering his purported re-enlistment, Jackson complained that it was fraudulent. The State of Washington investigated Jackson's claims and found that the enlistment contract was enforceable. Jackson then filed a declaratory judgment action against Washington and the United States seeking an order that the enlistment agreement was not enforceable. That case was resolved after Washington agreed to honorably discharge Jackson.

## III.   Proceedings Before the District Court

After the resolution of his declaratory judgment action, Jackson filed a complaint against Tate and DeCoteau pursuant to 42 U.S.C. § 1983 or, in the alternative, *Bivens v. Six*

---

[2]United States General Accounting Office, Report to the Subcommittee on Personnel, Committee on Armed Services, U.S. Senate, Military Personnel DOD Actions Needed to Improve the Efficiency of Mobilizations for Reserve Forces (August 2003) at 9 (available at: http://www.gao.gov/new.items/d03921.pdf).

*Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging federal constitutional and state law tort claims based on the alleged fraudulent re-enlistment. The complaint seeks compensatory and punitive damages, as well as attorneys fees and costs.

Tate and DeCoteau, represented by the United States Attorney, moved to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The government argued first that Jackson's complaint is properly cognizable as a suit against the United States under the Federal Tort Claims Act because Tate and DeCoteau were federal employees acting within the scope of their employment at the time of the acts giving rise to Jackson's cause of action. The government further argued that (1) under the Westfall Act, 28 U.S.C. § 2670, *et seq.*, Tate and DeCoteau are entitled to absolute immunity from suit in their personal capacities for their alleged actions, because at the time they were federal employees acting within the scope of their employment; and (2) Jackson's claims against the United States are barred by the FTCA's two-year statute of limitations because he failed to first present his claims to the Army in an administrative action within two years. In support of these arguments, the government submitted the certification of Assistant United States Attorney Brian Kipnis, which states that, based on the information available to him, Tate and DeCoteau were acting within the scope of their employment as employees of the United States at the time of the acts giving rise to Jackson's cause of action.

The government also argued that Jackson's suit is barred by the doctrine of intra-military immunity, first announced in *Feres v. United States*, because it seeks monetary damages for injuries that "arise out of or are in the course of activity incident to [military] service." 340 U.S. 135, 146 (1950).

The district court rejected the government's first argument, finding the Attorney General's Westfall Act certification inef-

fective because Tate's and Decoteau's allegedly fraudulent enlistment activity was not included within the scope of activities that qualify a member of the National Guard as an "[e]mployee of the government" under 28 U.S.C. § 2671. Nonetheless, the district court granted Tate's and Decoteau's motion to dismiss on the basis of their second argument, applying this court's holding in *Zaputil v. Cowgill*, 335 F.3d 885, 887 (9th Cir. 2003), in ruling that Jackson's claims are barred pursuant to the *Feres* doctrine.

This appeal followed.

### STANDARD OF REVIEW

A dismissal pursuant to the *Feres* doctrine is reviewed de novo. *Costo v. United States*, 248 F.3d 863, 865-66 (9th Cir. 2001). "In reviewing an order dismissing an action for lack of subject matter jurisdiction, we must accept all of the plaintiff's factual allegations as true.' " *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1997) (quoting *McGowan v. Scoggins*, 890 F.2d 128, 136 (9th Cir. 1989)).

We review de novo the district court's decision to reject the Attorney General's Westfall Act certification of the defendants; however, the Westfall Act "grants the Attorney General the right to decide the scope of employment issue in the first instance." *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993). "Accordingly, the party seeking review bears the burden of presenting evidence and disproving the Attorney General's decision to grant or deny scope of employment certification by a preponderance of the evidence." *Id.* (citations omitted). When the plaintiff challenges the Attorney General's scope of employment certification, "[t]he United States . . . must remain the federal defendant in the action unless and until the District Court determines that the employee, *in fact*, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment." *Osborn v. Haley*, 549 U.S. 225, 231 (2007) (emphasis in original).

*DISCUSSION*

## I. *Feres* Doctrine Background

**[1]** The Federal Tort Claims Act effects a broad waiver of the United States' sovereign immunity from suit for tort damages. *See* 28 U.S.C. § 2674. In an exception to this waiver, the FTCA withholds the United States' consent to be sued for "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." *Id.* at 2680(j). In *Feres*, the Court expanded this exception, holding "that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146. The *Feres* doctrine has expanded over time to apply to constitutional claims brought under section 1983 and *Bivens,* as well as tort claims brought under the FTCA; to suits between service members, including National Guardsmen, as well as against the United States; to inactive duty service members, as well as active duty; and to intentional torts as well as negligence claims "whenever a legal action would require a civilian court to examine decisions regarding management, discipline, supervision, and control of members of the armed forces." *Bowen v. Oistead*, 125 F.3d 800, 803-04 (9th Cir. 1997) (citations and internal quotations omitted).

**[2]** Courts have applied the *Feres* doctrine in cases where "two common factors" have been present: "One. The injured person was a member of the armed forces of the United States at the time the injury was sustained. Two. The injury must arise out of or occur in the course of activity incident to military service." *McGowan*, 890 F.2d at 132 (citations omitted). Because there is no dispute that Jackson was a member of the Individual Ready Reserve component of the United States Army Reserve at time of the events giving rise to his cause of action, the key inquiry before us is whether the fraudulent

enlistment alleged in the complaint constitutes an "activity incident to [Jackson's] military service." *Id.*

## II. The *Feres* Doctrine Does Not Bar Jackson's Suit Because His Alleged Injury Was Not Sustained Incident to Service.

**[3]** The *Feres* doctrine precludes servicemembers from bringing damages actions against the United States and its employees for injuries that arise out of or in the course of military service; however, the "intramilitary immunity under *Feres* applies to members of the armed forces of the United States who are injured as an incident to their *current* military service." *Id.* at 137 (citing *Feres*, 340 U.S. at 138) (emphasis added).

In *Johnson v. United States*, 704 F.2d 1431, 1436-41 (9th Cir. 1983), we articulated four factors for determining whether an injury has been sustained in the course of an activity "incident to service," including (1) the location where the activity giving rise to the injury occurred; (2) the duty status of the plaintiff at the time of activity giving rise to the injury; (3) the benefits accruing to the plaintiff because of his status as a service member; and (4) the nature of the plaintiff's activities at the time of the activity giving rise to the injury. *See Costo*, 248 F.3d at 867 (citing *Dreier*, 106 F.3d at 848); *see also Day v. Mass. Air Nat'l Guard*, 167 F.3d 678, 682 (1st Cir. 1999) (*citing United States v. Johnson*, 481 U.S. 681, 686 & n. 7 (1987); *United States v. Shearer*, 473 U.S. 52, 57 (1985)). "While rigid rules derived from these four factors may sometimes be relevant, they cannot be blindly applied to determine whether an injury occurred 'in the course of activity incident to service.' The only way to decide whether an injury is incident to service is to consider the facts of each individual case." *Johnson*, 704 F.2d at 1436 (citation omitted).

In *McGowan*, we reversed a district court's order dismissing pursuant to the *Feres* doctrine the damages action of a

retired military officer who alleged that he was forcibly detained and injured by military personnel—including an on-duty sergeant, captain, and lieutenant colonel—for disobeying orders while on an United States Air Force base to pick up a base parking decal. 890 F.2d at 136-37. Although we held that McGowan was not a member of the armed forces at the time of events giving rise to his injury, we also independently rejected the government's argument "that Professor McGowan was injured as an incident to service because the right to get a parking decal is a privilege conferred on him by virtue of his military status." *Id.* at 138. Although McGowan's right to a parking decal was a benefit that he enjoyed due to his military service, the benefit was not "incident to *current* military service." *Id.* at 138 (emphasis in original). At the time of his injury

> Professor McGowan was not employed at Mather Air Force Base. His work as a history teacher at the University of California at Davis is not subject to military supervision, command, or discipline. While on a military base, he is subject to the same regulations that govern the conduct of any other civilian visitor. Professor McGowan, while standing in line at the Visitor's Center to get a parking decal was under "compulsion of no orders or duty and on no *military* mission." *Feres*, 340 U.S. at 146, 71 S. Ct. at 159 (emphasis added). The injuries Professor McGowan sustained while attempting to get a parking decal were not incident to his former military service "except in the sense that all human events depend upon what has already transpired." *Brooks*, 337 U.S. at 52, 69 S. Ct. at 920. Professor McGowan's "presence on the base [had] little to do with [his prior] military services." *Johnson*, 704 F.2d at 1437.

*Id.* at 139.

**[4]** Applying the four factors articulated in *Johnson* in light of *McGowan*, we conclude that the district court erred in dismissing Jackson's complaint pursuant to the *Feres* doctrine because Jackson's alleged injury did not arise incident to his military service. The acts complained of occurred after his service had been completed, unrelated to any benefit or duty connected to a service obligation he has already incurred. Like McGowan, at the time of his alleged injury, Jackson was engaged in civilian employment, not subject to military supervision, command, or discipline. Although the government argues that Jackson's service obligation in the IRR placed him under military control because he was subject to call up at any time and required to maintain fitness for duty, we note, as we did in *McGowan*, "If [Jackson] had been recalled and was reporting for duty . . ., the resolution of this matter would require a different analysis. That question is not before us." 890 F.2d at 138. Jackson's status as an inactive reservist certainly made him subject to be *ordered* to active duty at a moment's notice; however, he was under no obligation to *re-enlist. Cf. Qualls v. Rumsfeld*, 412 F. Supp. 2d 40, 43 (D.D.C. 2006) (distinguishing involuntary extension of service due to "stop loss" policy from voluntary re-enlistment).

In dismissing Jackson's suit, the district court relied on our precedent in *Zaputil v. Cowgill*, 335 F.3d 885 (9th Cir. 2003). In *Zaputil*, the servicemember had applied for and received a transfer from the California Air National Guard to the United States Air Force Reserve, and, by order of the Governor, was honorably discharged from the Air National Guard and transferred accordingly. *Id.* at 886. Shortly thereafter, Zaputil's discharge order was revoked and she was recalled to duty with the California Air National Guard. *Id.* After protesting the revocation and again receiving an honorable discharge, Zaputil sued the California Air National Guard and several individual guardsmen for damages; however, the district court dismissed her suit pursuant to the *Feres* doctrine and we affirmed. *Id.* at 887-88. We held that Zaputil's suit was barred by the *Feres* doctrine because the order to recall her, regard-

less of whether the order was erroneous or unlawful, implicated military decisions, affairs and discipline. *Id.* at 887.

**[5]** This case is distinguishable from *Zaputil* because the plaintiff in that case challenged the validity of an order that she received within the context of her *existing* service obligation. In contrast, Jackson was not recalled or otherwise ordered to active duty within his existing military service obligation as a member of the Ready Reserve. Instead, Jackson challenges the validity of his supposed consent to incur an *additional* service obligation, entirely distinct from his "current military service." *McGowan*, 890 F.2d at 137. Indeed, a servicemember's re-enlistment, as opposed to being recalled or otherwise ordered to duty, falls outside the scope of *Feres*' "incident to service" standard because that decision is solely the province of "the enlistee [who] . . . voluntarily submit[s] himself to military authority by virtue of his enlistment . . . ." *Even v. Clifford*, 287 F. Supp. 334, 338 (S.D. Cal. 1968) (comparing voluntary submission of enlistees with involuntary submission selective service inductees). We therefore hold that Jackson's alleged injury does not arise out of an activity incident to his service and his complaint is not barred by the *Feres* doctrine.

## III. The District Court Erred in Rejecting the Attorney General's Westfall Act Certification.

**[6]** Under the Westfall Act, federal employees receive absolute immunity from suit "for their 'negligent or wrongful act[s] or omission[s] . . . while acting within the scope of [their] office or employment.' " *Green*, 8 F.3d at 699 (quoting 28 U.S.C. § 2679(b)(1)). The statute "grants the Attorney General authority to certify that a federal employee named defendant in a tort action was acting within the scope of his or her employment at the time in question," and if the Attorney General makes such a certification, then "the United States must be substituted as the defendant." *Osborn*, 549 U.S. at 240-41 (citing 28 U.S.C. § 2679(d)(1)). "The United

States . . . must remain the federal defendant in the action unless and until the District Court determines that the employee, *in fact*, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment." *Id.* at 231 (emphasis in original). Jackson, as the party seeking review of the Attorney General's decision to grant scope of employment certification, "bears the burden of presenting evidence and disproving [that] decision . . . by a preponderance of the evidence." *Kashin v. Kent*, 457 F.3d 1033, 1036 (9th Cir. 2006) (quoting *Green*, 8 F.3d at 698).

Under the Westfall Act, a National Guardsman is considered a federal employee "while engaged in training or duty under section 115, 316, 502, 503, 504, or 505 of title 32." 28 U.S.C. § 2671. Subsection 502(f)(1) of title 32 places a broad swath of National Guard activity within the scope of federal employment for purposes of the Westfall Act, because it covers "training or other duty" that a guardsman may be ordered to perform "[u]nder regulations to be prescribed by the Secretary of the Army or Secretary of the Air Force . . . ."

Tate and DeCoteau performed recruiting duties while assigned to full-time Active Guard and Reserve Program positions within the National Guard's Recruiting and Retention Command. Recruiting activities performed by service members on Active Guard and Reserve duty fall within the ambit of activities covered by 28 U.S.C. § 502(f). "The Active Guard/Reserve ("AGR") [ ] program [was] authorized by federal statute, *see* 32 U.S.C. § 502(f), and created to provide full-time military support personnel to assist in the administration of the National Guard of the various states." *Bowen*, 125 F.3d at 802. Subsection 101(d)(6)(A) of Title 10 clearly includes "recruiting" within the scope of Active Guard/Reserve duties to be performed by full-time members of the state National Guard.

**[7]** Furthermore, the Department of the Army has promulgated regulations that apply to Army National Guard Reserve

soldiers serving on full-time duty under provisions of 28 U.S.C. § 502(f), setting policies and procedures for recruiting. National Guard Regulation 600-5, Summary, ¶ 1-1 (February 20, 1990); National Guard Regulation 601-1, 1 (April 28, 2006) (applying to Army National Guard a "regulation integrat[ing] all of the recruiting and retention programs, policies and procedures necessary for developing, implementing and monitoring a successful strength maintenance program at the State/Territory level").[3] These regulations indicate that Tate and DeCoteau were acting as federal employees if they were, in fact, participating in recruiting activities as full-time members of the Washington Army National Guard on Active Guard/Reserve duty at the time of the events in question. The district court's ruling to the contrary was erroneous.

[8] This, however, is not the end of the Westfall Act inquiry in this case. As we have indicated above, the United States remains the named federal defendant "unless and until the District Court determines that the employee, *in fact*, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment." *Osborn*, 549 U.S. at 231. And, as we have further indicated, Jackson bears the burden of proof by a preponderance of the evidence on this issue. *See Kashin*, 457 F.3d at 1036. This factual determination remains to be made in this case.

---

[3]

This regulation sets policy and procedures for management of the Active Guard/Reserve (AGR) Program in the Army National Guard. It provides National Guard Bureau policy and procedures for selection, utilization, career management, professional development, separation, and administration of Army National Guard (ARNG) soldiers serving on Full-Time National Guard Duty (FTNGD) under provisions of *section 502(f), title 32 United States Code*, for the purpose of organizing, administering, *recruiting*, instructing, or training the ARNG.

*Id.* (emphasis added).

We therefore remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.